### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND


CHANEL, INC.              *

    V.                 *     CIVIL NO. WDQ-09-843

LADAWN BANKS           *


### AMENDED REPORT AND RECOMMENDATION

This matter comes before the Court upon motion by plaintiff Chanel, Inc. ("Chanel") for an entry of default judgment against Ladawn Banks ("Banks"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for failure to appear, answer, or otherwise defend in this matter. Chanel further seeks injunctive relief pursuant to 15 U.S.C. § 1116 and statutory damages pursuant to 15 U.S.C. § 1117(c) for infringement and counterfeiting and federal false designation of origin against defendant Banks. For the reasons set forth below, the undersigned recommends that the Court grant the motion in part and deny in part.

## I. Background

Chanel is a corporate entity duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York. (ECF No. 1). Chanel is engaged in the business of manufacturing and distributing

1

throughout the world various goods including handbags, wallets and numerous other products under the federally registered trademarks "Chanel" and monograms (collectively "Chanel Marks"). (Id. at ¶ 13). Chanel expends substantial time, money, and other resources developing, advertising, and otherwise promoting the Chanel Marks in the United States in association with the sale of handbags, wallets, jewelry, sunglasses and other goods. Id. at ¶¶ 17-19. Chanel contends that as a result of these efforts, consumers readily identify merchandise bearing Chanel Marks as being high quality merchandise sponsored and approved by plaintiff. Id. Accordingly, Chanel asserts that its marks achieved secondary meaning. Id. at ¶ 20.

Commencing at least as early as 1955, Chanel registered its trademarks in the United States Patent and Trademark Office. At present, Chanel's U.S. trademark registrations include, inter alia: CC MONOGRAM (Reg. No. 1,734,822), CC MONOGRAM (Reg. No. 1,314,511), CC MONOGRAM (Reg. No. 3,022,708), CHANEL (Reg. No. 0,626,035), CHANEL (Reg. No. 1,347,677), and CHANEL (Reg. No. 1,733,051). These trademarks are registered in International Classes 16 and 18 and are used in connection with the manufacture and distribution of many products, including but not limited to handbags and wallets. Id.

Defendant Ladawn Banks allegedly owned and operated the fully interactive website "Lovenamebrands.com," through which she allegedly offered for sale handbags and wallets bearing counterfeit marks identical to registered Chanel Marks. (ECF No. 1, 3; ECF No. 17-2, 3; ECF No. 17-6). The Chanel trademarks described above were never assigned or licensed to defendant. (Exhibit D, ¶ 8 to ECF No. 17-2). Chanel further asserts that at all times relevant to this matter, defendant had knowledge of Chanel's ownership of the above listed trademarks, including its exclusive right to use and license the trademarks and the goodwill associated with the Chanel name. (ECF No. 1, ¶ 21).

Chanel claims that the counterfeit goods are of a quality substantially different from plaintiff's genuine goods, and that defendant is actively distributing and advertising substantial quantities of the counterfeit goods with knowledge that purchasers will mistake such goods for the high quality products offered for sale by Chanel. Id. at 9. Further, Chanel claims that defendant misappropriated its advertising ideas and business styles with respect to Chanel's genuine products. Id. Chanel argues that defendant's actions confused consumers as to the origin of defendant's counterfeit goods. Id.

Finally, Chanel contends that defendant engaged in the above described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or

3

willful blindness to Chanel's rights for the purpose of trading on the goodwill and reputation associated with the Chanel name. Id. at 10. Accordingly, Chanel asserts that if the Court does not preliminarily and permanently enjoin defendant's counterfeiting and infringing activities, the injury to Chanel and consumers will continue. Id. Chanel further claims that defendant's wrongful importation, advertisement, promotion, and sale of its counterfeit goods caused Chanel's injuries and damages. Id.

On April 3, 2009, Chanel initiated this action against defendant by filing a complaint for damages and injunctive relief.[1] Plaintiff served defendant with the summons and complaint on April 9, 2009 at her home address in Miami, Florida. See (ECF No. 9). Although defendant was required to answer the complaint by April 30, 2009, she failed to respond or request an extension of time. Further, defendant failed to appear in the instant action and failed to produce any records or other evidence on her behalf. Id. On June 11, 2009, the Court entered default against defendant for failure to appear, plead, or otherwise defend. Id. Chanel requests that the Court grant final default judgment against defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure. Chanel's Motion for

---

[1] Originally, plaintiff sued Ms. Banks and other entities, Dennis Ofori, Alfred R. Mcallister, and the Crystal Cove Defendants, but consent judgment was entered against all Ms. Banks' co-defendants. (ECF No. 28-1; ECF No. 31-1).

Default Judgment raises three issues for the Court:  First, is entry of default proper under Fed. R. Civ. P. 55; second, has Chanel adequately stated its claims so that the Court may enter default judgment thereon; third, to what relief is Chanel entitled?

## II.  Analysis

### A.  Jurisdiction

This Court has subject matter jurisdiction over the instant case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).  Service of process was obtained on defendant in accordance with FED. R. CIV. P. 4, as described above.  (ECF No. 9).  Although Banks lived in Maryland prior to 2008, she was allegedly domiciled in Florida as of the filing of this case.[2]  (ECF No. 1, 3; ECF No. 17-6, 5).  Given that Banks is a nonresident defendant, this Court may exercise personal jurisdiction over her only if the exercise of jurisdiction is both authorized under Maryland's long-arm statute and comports with the due process requirements of the Fourteenth Amendment.  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).  The Court of Appeals of Maryland has held that Maryland's long-arm statute is coextensive with the limits set by the Due Process Clause of the United States Constitution,

---

[2] Consent judgment has been entered against all co-defendants in this case who resided and/or conducted business in Maryland.  ECF No. 28-1; ECF No. 31-1).

indicating that the requisite statutory and constitutional inquiries merge here. Id. (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 61 (4th Cir. 1993)).

In order to comport with the requirement of due process, this Court may exercise personal jurisdiction only if defendant has "minimum contacts" with Maryland such that requiring her to defend her interests here would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(internal quotations omitted). The Court may exercise general personal jurisdiction if defendant engaged in "continuous and systematic" contacts with the forum state, regardless of the connection of those contacts to the facts of this case. Carefirst of Md., Inc., 334 F.3d at 397; ; ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). There is no evidence indicating that defendant engaged in "systematic and continuous" contacts with Maryland.

Alternatively, the Court may exercise specific personal jurisdiction if (1) defendant purposefully availed herself of the privilege of conducting activities in the state; (2) plaintiff's claims arise out of defendant's activities directed at the state; and (3) if the exercise of personal jurisdiction would be constitutionally "reasonable." Id.; ALS Scan, Inc., 293 F.3d at 711-12. According to Chanel, although defendant

Banks is a resident of Florida, she conducted business in this jurisdiction via several interactive websites. (ECF No. 1, ¶¶ 7-10). The domain name "Lovenamebrands.com" was registered anonymously on July 30, 2008, but shows Banks' Florida address. (ECF No. 17-6, 12). Defendant's website allowed customers in Maryland and elsewhere to purchase Chanel-branded handbags and wallets. (ECF No. 17-6, 3-5). In addition, at least one Chanel-branded handbag purchased through this website and discovered to be counterfeit was mailed from an Elkridge, Maryland address. (ECF No. 17-6, 4).

The mere fact that a website sells allegedly infringing or counterfeit goods in Maryland does not alone satisfy the "minimum contacts" necessary to satisfy due process and thereby establish personal jurisdiction in Maryland. The Fourth Circuit has adopted the "sliding scale" model for Internet-based specific jurisdiction, as originally articulated by the Western District of Pennsylvania in <u>Zippo Manufacturing Company v. Zippo Dot Com, Inc.</u> <u>Carefirst of Md., Inc.</u>, 334 F.3d at 399 (<u>citing Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

In adopting this standard, the Fourth Circuit concluded that:

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the

> State, (2) with the manifested intent of engaging in
> business or other interactions within the State, and
> (3) that activity creates, in a person within the
> State, a potential cause of action cognizable in the
> State's courts.

ALS Scan, 293 F.3d at 714.  That defendant allegedly sold

counterfeit Chanel goods via her website to a Maryland customer

demonstrates that she directed electronic activity into the

state and gives rise to a potential cause of action cognizable

in the State's courts.  The relationship between Banks and her

Maryland co-defendants and the Elkridge, Maryland address that

was affiliated with defendant's ongoing business support the

Court's finding that she intended to engage in business or other

interactions within the State.

The Zippo court distinction between interactive, semi-

interactive, and passive websites is also particularly relevant.

See Carefirst of Md., Inc., 334 F.3d at 399.  Semi-interactive

sites, such as defendant's website "Lovenamebrands.com," are

websites "through which there have not occurred a high volume of

transactions between the defendant and residents of the foreign

jurisdiction, yet which do enable residents to exchange

information with the host computer."  Carefirst of Md., Inc.,

334 F.3d at 399.  In cases involving semi-interactive sites,

"the exercise of jurisdiction is determined by examining the

level of interactivity and commercial nature of the exchange of

information that occurs."  Id. (citing Zippo, 952 F.Supp. at

1124).  Defendant's website at issue in this case was highly
interactive and provided a platform for the commercial exchange
of information, goods, and funds.  Thus, this Court has personal
jurisdiction over defendant in this matter.

**B.    Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts
to enter a default judgment against a properly served defendant
who fails to file a timely responsive pleading.  In reviewing
plaintiff's Motion for Entry of a Default Judgment (ECF No. 17),
the Court accepts as true the well-pleaded factual allegations
in the complaint as to liability.  Ryan v. Homecomings Fin.
Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It, however,
remains for the Court to determine whether these unchallenged
factual allegations constitute a legitimate cause of action.
Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE §
2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established
simply because of the default . . . and the court, in its
discretion, may require some proof of the facts that must be
established in order to determine liability.").  In making this
determination, the Court must consider three factors: (1)
whether the plaintiff will be prejudiced if default is not
granted, (2) whether the defendant has a meritorious defense,
and (3) whether the defendant's delay was the result of culpable
misconduct.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d

Cir. 1987). See also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987) (relying on these factors in determining whether a default judgment merited reconsideration).

If the Court determines that liability is established, it must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. Unlike allegations of fact, the Court does not accept allegations regarding damages as true, but rather must make an independent determination regarding such allegations. E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. FED. R. CIV. P. 55(b)(2). The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F.Supp. 2d 15, 17 (D.D.C. 2001) (finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum). In sum, the Court must (1) determine whether the unchallenged facts in plaintiff's Complaint constitute a legitimate cause of action, and, if so,

(2) make an independent determination regarding the appropriate amount of damages.

The Clerk of Court having filed entry of default, the Court concludes that the procedural requirements for entry of default judgment have been met. Moreover, because defendant has failed to file any responsive pleadings or otherwise show cause why default should not be granted, the Court is "not in a position to judge whether the defendant has a meritorious defense or whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73. Further, defendant's failure to appear deprived Chanel of any other means of vindicating its claim and Chanel will be prejudiced if default is not granted. As discussed below, Chanel is entitled to default judgment.

## C. Causes of Action

Although Chanel meets the technical requirements for entry of default judgment, the inquiry does not end with this determination. It is well settled that upon default, the defendant admits the plaintiff's well pleaded allegations of fact. Ryan, 253 F.3d at 780. However, the Court must determine whether the well-pleaded allegations of fact support the claims and the relief sought. Id.; Croce, 332 F. Supp. 2d at 717. Plaintiff brings two counts against defendant: (1) trademark counterfeiting and infringement under § 32 of the Lanham Act (15

U.S.C. § 1114); and (2) false designation of origin under § 43 of the Lanham Act (15 U.S.C. § 1125(a)). (ECF No. 1, 9-11).

**Count 1: Trademark Counterfeiting and Infringement**

Plaintiff first sues under § 32 of the Lanham Act, codified at 15 U.S.C. § 1114, for trademark counterfeiting and infringement against defendant based on the promotion, advertisement, distribution, sale and/or offering for sale of counterfeit goods bearing Chanel Marks. (ECF No. 1, 9-10).

Section 1114 provides separate actions for trademark infringement and trademark counterfeiting. Under § 1114(1)(a), to prevail on claims for trademark infringement under the Lanham Act, a plaintiff must prove:

> (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

Lamparello, 420 F.3d at 323 (quoting PETA v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001)). The first two requirements are satisfied when a federally registered mark has become incontestable. A plaintiff that prevails in an action brought under § 1114(1)(a) is entitled to recover defendant's profits, plaintiff's damages, and the costs of the actions. 15 U.S.C. § 1117(a)). If the § 1114(1)(a) violation involves intentional

12

use of a counterfeit mark, the court shall, absent extenuating circumstances, enter judgment for three times the greater of defendant's profits or plaintiff's damages.  15 U.S.C. § 1117(b).

To establish federal trademark counterfeiting under 15 U.S.C. § 1114(1)(b), the record must establish that:

> (1) [defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive."

State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005) (citing J. THOMAS MCCARTHY, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:15).  A plaintiff that prevails in an action brought under § 1114(1)(b) is entitled to recover defendant's profits, plaintiff's damages, and the costs of the actions.  15 U.S.C. § 1117(a)).

In the alternative, plaintiff may move for statutory damages under which the Court may award between $1,000 and $200,000 per counterfeit mark per type of goods sold, or up to $2,000,000 per counterfeit mark per type of goods sold if use of the counterfeit mark was willful.  15 U.S.C. § 1117(c). Willfulness may be inferred if a defendant continued the infringing behavior after receiving notice.  Video Views, Inc. v. Studio 21 Ltd., 925 F.2d 1010, 1021 (7th Cir. 1991), abrogated on other grounds by Budget Cinema, Inc. v. Waterhouse

Assoc., 81 F.3d 729 (7th Cir. 1996); Chanel v. Gordashevsky,
Civ. No. 05-5270, 2007 WL 316433 (D.N.J. Jan. 29, 2007)
(footnotes omitted).

Plaintiff's well-pleaded allegations of fact as set forth
in the complaint (ECF No. 1) and as supplemented and supported
in the affidavits and documents filed in support of its motion
for final default judgment (ECF No. 17) show that the elements
of a claim under either 15 U.S.C. § 1114(1)(a) or (b) have been
met. Chanel has established that it is the registrant and owner
of certain marks (ECF No. 17-8 of Ex. C and Ex. D, ¶ 4); that
defendant intentionally advertised, offer to sell, and sold
handbags and wallets that used Chanel's registered marks,
without permission (ECF No. 17-8, Ex. D § 8; ECF No. 17-9, Ex.
E; ECF No. 17-6, Ex. B); and that those handbags and wallets
were counterfeit and of a nature that they were likely to
confuse or deceive consumers (ECF No. 17-2, 3). Because
defendant continued her infringing behavior after receiving a
cease and desist letter, her conduct was willful. (ECF No. 17-
2, 8-9).

Accepting these allegations as true, the Court finds that
defendant willfully infringed and counterfeited Chanel's
registered trademarks in violation of 15 U.S.C. § 1114 by
intentionally and unlawfully using such marks in a manner that
was "likely to cause confusion, or to cause mistake, or to

14

deceive." 15 U.S.C. § 1114(1)(a)-(b).  Therefore, the Court

finds that Chanel's complaint sets forth a claim upon which

relief may be granted under either 15 U.S.C. § 1114(1)(a), (b),

or (c).

**Count II: False Designation of Origin**

Plaintiff also sues in Count II for false designation of

origin pursuant to § 43(a) of the Lanham Act, codified at 15

U.S.C. § 1125(a).  (ECF No. 1, 10-11).  Federal trademark

infringement under 15 U.S.C. § 1114(1)(a) and false designation

of origin under 15 U.S.C. § 1125(a)(1)(A) are measured by

identical standards pursuant to the Lanham Act.  Lamparello v.

Falwell, 420 F.3d 309, 313 (4th Cir. 2005); A & H Sportswear,

Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d

Cir. 2000).

Damages under this section are also identical to those

under § 1114(1)(a), as a plaintiff that prevails in an action

brought under § 1125(a) is entitled to recover defendant's

profits, plaintiff's damages, and the costs of the action.  15

U.S.C. § 1117(a)).  If the violation involves intentional use of

a counterfeit mark, the court shall, absent extenuating

circumstances, enter judgment for three times the greater of

defendant's profits or plaintiff's damages, in addition to

reasonable attorney's fees.  15 U.S.C. § 1117(b).  As noted

above, plaintiff's well-pleaded allegations of fact, as set

forth in the complaint (ECF No. 1) and as supplemented in the affidavits and documents filed in support of its motion for final default judgment (ECF No. 17), show that the elements of this claim have been met.

**D.    Damages Analysis**

Having found that plaintiff's well-pleaded allegations of fact support default judgment in its favor on Count I due to defendant's intentional and willful counterfeiting of plaintiff's registered marks, the Court recognizes that 15 U.S.C. § 1117 permits plaintiff to recover three times the greater of defendant's profits or plaintiff's damages, as well as  reasonable attorney's fees.[3]  15 U.S.C. § 1117(b).  However, such an award requires proof as to the amount of defendant's sales or plaintiff's damages, which plaintiff cannot conclusively establish here.  15 U.S.C. § 1117(a); (ECF No. 17-2, 7-8).

Alternatively, plaintiff may recover statutory damages of between $1,000 and $2,000,000 per counterfeit mark per type of goods sold.  15 U.S.C. § 1117(c); (ECF No. 17-2, 8).  The Lanham Act provides that, within this broad range of statutory damages, the Court shall make an award that it "considers just."  Id.

---

[3] Chanel acknowledges its entitlement to damages only under Count I (counterfeiting and infringement) or Count II (false designation of origin), but not both.  (ECF No. 17-1, 11-12).  Because plaintiff is only entitled to relief under one of these two statutes, the Court shall not further consider the second count for purposes of a damage award.

Thus, the Court has broad discretion to fashion a statutory award based on the particular facts of the case and general principles of fairness. <u>Larsen v. Terk Tech. Corp.</u>, 151 F.3d 140, 149-50 (4th Cir. 1998) (recognizing that courts have "a great deal of discretion . . . in fashioning a remedy" under the Lanham Act); <u>Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc.</u>, 12 F. Supp. 2d 499, 500 (D. Md. 1998) ("The award of monetary damages, attorney fees and costs under the Lanham Act is committed to the sound discretion of the Court based on the equities of each particular case."); <u>Louis Vuitton Malletier & Oakley, Inc. v. Veit</u>, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) ("In the absence of clear guidelines for setting a statutory damage award, courts tend to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants...."); 5 MCCARTHY § 30:89.

##### 1.   Plaintiff's Proposed Damages Calculations

Plaintiff in this case has exercised its option to seek statutory damages under 15 U.S.C. 1117(c).  (ECF No. 17-2, 7). As stated above, the Court has broad discretion to award statutory damages in any amount between $1,000 and $2,000,000 (the "baseline figure") per counterfeit mark per type of goods sold.  15 U.S.C. § 1117(c).  Based upon its proposed method of calculating damages in this case, plaintiff seeks an award of $278,809.86.

In order to reach this sum, plaintiffs first established a "baseline figure" of $6,638.33 by averaging the value of the entire inventory of counterfeit Chanel items listed for sale on defendant's website on six different days. (ECF No. 17-1, 10). These items included between 35 and 37 differently-styled handbags and between 0 and 13 differently-styled wallets. (Id.). Next, plaintiff trebled the $6,638.33 baseline figure "to reflect the Defendant's willfulness and for the purpose of deterrence," thereby yielding a sum of $19,914.99. (Id.). Plaintiff then multiplied the trebled base number by the number of Chanel's registered marks – seven – for a total of $139,404.93. Finally, plaintiff multiplied its damages sum by the number of different types of infringing goods – two – for a total of $278,809.86. (Id., 10-11). The Court accepts that defendant infringed seven registered Chanel marks and attempted to sell two distinct types of goods, but declines to adopt plaintiff's "baseline figure" of $6,638.33 for the reasons set forth below.

## 2.  Damages for Willful Counterfeiting

In 1984, Congress amended the Lanham Act to provide treble damages for willful counterfeiting in order to compensate plaintiffs for financial loss and damage to their goodwill, as well as to deter and punish defendants. Veit, 211 F. Supp. 2d at 583; S. Rep. No. 98-526, 1984 U.S.S.C.A.N. 3627, 3632. The

U.S. Senate, reporting favorably on the language later codified as § 1117(b), clarified that this subsection establishes the mandatory award of treble damages (or profits) and costs for willful counterfeiting, and emphasized that § 1117's provision limiting relief to compensatory damages does not apply to this subsection.  S. Rep. No. 98-526, 1984 U.S.S.C.A.N. 3627, 3632 ("An award of treble damages will thus serve as a form of punitive damages.").

The Lanham Act contemplates that an award in willful counterfeiting cases of three times plaintiff's damages or defendant's profits, whichever is greater, will generally accomplish the goals of deterrence, repayment, and punishment. 15 U.S.C. § 1117.  Some courts have held that courts are not required to award treble damages where trademark infringement is willful, although they have the discretionary authority to do so.  See, e.g., Playboy Enter's, Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272 (9th Cir. 1982) (finding that the district court did not abuse its discretion by refusing to increase a trademark owner's damages award where treble damages were permitted by statute); Project Strategies Corp. v. Nat'l Comm'ns Corp., 948 F. Supp. 218 (E.D.N.Y. 1996) (finding that an award of treble damages is discretionary, even where the Lanham Act violation is willful); Sun Prods. Group, Inc. v. B&E Sales Co., Inc., 700 F. Supp. 366 (D. Mich. 1988) (same).

This interpretation of § 1117, however, is not entirely consistent with the plain language of the statute or its legislative history.  15 U.S.C. § 1117(b) ("the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater . . . if the violation consists of . . . intentionally using a mark . . . knowing such mark [] is a counterfeit mark . . ."); S. Rep. No. 98-526, 1984 U.S.S.C.A.N. 3627, 3632 ("[M]andatory awards of treble damages (or profits) and costs are crucial to a successful fight against counterfeiting."). Thus, the Court finds that an award of treble damages (or profits) is mandatory in cases involving willful counterfeiting under the Lanham Act, and that the Court may depart downward from treble damages only under "extenuating circumstances."  15 U.S.C. § 1117(b).

### 3.   Statutory Damages

Recognizing that actual damage and profit calculations are frequently impossible in trademark infringement cases, as they are here, Congress enacted alternative statutory damages in 1996 to serve as a proxy for actual damages.[4]  5 MCCARTHY § 30:95;

---

[4] In adopting the statutory damage provision, the Senate commented:

> This section amends section 35 of the Lanham Act, allowing civil litigants the option of obtaining discretionary, judicially imposed damages in trademark counterfeiting cases, instead of actual damages.  The committee realizes that under current law, a civil litigant may not be able to prove actual damages if a

Century 21 Real Estate LLC v. Bercoas Corp., 666 F. Supp. 2d 274, 291 (E.D.N.Y. 2009); S. Rep. No. 104-177 (Nov. 28, 1995). Accordingly, a statutory damages award should "bear[] some relation" to what a plaintiff may have gotten based on an actual damages calculation whenever possible. Bly v. Banbury Books, 638 F. Supp. 983, 987 (E.D. Pa. 1986). See also Malletier v. Apex Creative Int'l Corp., 687 F. Supp. 2d 347, 355-56 (S.D.N.Y. 2010); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting 4 MELVILLE B. NIMMER & DAVID NIMMER ON COPYRIGHT § 14.04(E)(1), at 14-69 (2003) ("To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'")); Coach, Inc. v. Ocean Point Gifts, Civ. No. 09-4215, 2010 WL 2521444, *6, 8 (D.N.Y. June 14, 2010) (checking an award of statutory damages against an approximation of what plaintiff could have gotten under an "actual damages" calculation).

Plaintiff in the instant case attempts to approximate actual damages by calculating the potential gross sales revenue

sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting.

Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters. The amounts are appropriate given the extent of damage done to business goodwill by infringement of trademarks.

S Rep. No. 104-177 (Nov. 28, 1995).

of defendant's entire inventory and using the resulting $6,638.33 baseline figure as a marker for "actual damages" or "profits." While the Court appreciates that defendant's failure to respond to the lawsuit has deprived plaintiff of information regarding plaintiff's actual damages or defendant's profits, plaintiff's $6,638.33 substitute marker is too speculative and imprecise to be credited.

Without information on the price of similar Chanel goods — and even with the price of similar goods – it is impossible to know what actual damages Chanel incurred as a result of defendant's counterfeit sales. It is arguably unreasonable to assume that a purchaser from defendant could otherwise be expected to buy a genuine Chanel good at an undoubtedly much higher price. In addition, there is no indication that defendant at any time actually had the volume of sales plaintiff suggests. To the contrary, the facts suggest that she was a very small-scale operator. Although plaintiff emphasizes that courts have discretion to accept indirect or circumstantial evidence of sales volume where the infringing party fails to provide evidence of its actual sales volume, not even gross sales revenues are known here. See (ECF No. 17-2, 8)(citing Brand v. NCC Corp., 540 F.Supp. 562, 565 (E.D. Pa. 1982)(defendant made no attempt to prove any cost deductions and "profits" were based on gross sales revenues); New York Racing

Ass'n v. Stroup News Agency Corp., 920 F.Supp. 295, 301

(N.D.N.Y. 1996)(when plaintiff proves gross sales and the

infringer fails to prove cost deductions, "then the profits to

which the plaintiff is entitled under the Lanham Act are equal

to the infringer's gross sales)). Plaintiff also fails to

appreciate that extenuating factors may influence a court's

discretionary decision to accept gross sales as a measure of

damages where pertinent information is unavailable. For

instance, in Brand v. NCC Corp., the court found it just to

award plaintiff damages in the sum of defendant's sales where

defendant strategically chose not to offer in evidence any costs

or deductions from these figures. 540 F.Supp. 562, 563-65 (E.D.

Pa. 1982); see also Aris Isotoner, Inc. v. Dong Jin Trading Co.,

1989 WL 236526 at *6 (S.D.N.Y. 1989)(relying upon circumstantial

evidence regarding defendant's sales where lack of information

was due to defendant's "inadequate recordkeeping" and failure to

produce documents known to be in his possession). Such factors

are not present here.

Even assuming that defendant were able to sell the entire

stock of goods posted on her website, her profit would

necessarily be less than the aggregate list price of her

inventory, which is what the $6,638.33 baseline figure submitted

by plaintiff represents. See Microsoft Corp. v. CMOS

Technologies, Inc., 872 F.Supp. 1329, 1337-38)(D.N.J. October

24, 1994)(Court accepted plaintiff's calculation that defendant's profit was $10 per counterfeit unit where average purchase price of the counterfeit products was $25.00 per unit and defendant sold the each unit to the public for $35.00).

The Court appreciates that at least one other district court has accepted a method of estimating the applicable baseline figure that is substantially similar to the approach plaintiff advocates here. See Chanel, Inc. v. Gordashevsky, 2007 WL 316433 (D.N.J.)(where information regarding actual profits was unavailable due to defendant's failure to respond to litigation, court accepted plaintiff Chanel's method of estimating defendant's actual profits from internet sales of counterfeit goods by assuming that defendant sold the entire inventory of counterfeit Chanel products listed for sale on a given date). In Chanel, Inc. v. Gordashevsky, however, Chanel predicated its baseline figure on the assumption that defendant's profits would be approximately 60 percent of the listed sale price, rather than using the total price for its calculations. Id. at *4-6. It is also worth noting that although the court trebled Chanel's baseline figure, it declined to multiply the trebled baseline figure by the number of counterfeit marks and types of goods sold as plaintiff asks the Court to do in this case. Id. at *6 (noting that, "[i]n similar cases involving multiple marks, courts either awarded the

24

maximum damages without multiplication by mark, or lowered the per mark award."). As a result, the damages award in Chanel, Inc. v. Gordashevsky was only $37,800 more than Chanel's proposed award here even though Gordashevsky operated four distinct websites each selling a large inventory of counterfeit Chanel products over a period of several years. Id. For these reasons, the Court finds that plaintiff's suggested $6,638.33 baseline figure, while within the permissible $1,000 to $2,000,000 range, does not sufficiently approximate actual profits or damages here to allow adoption here.

Statutory damages may also provide an alternative measure where "actual damages [are] quite paltry and [do] not reflect the seriousness of the future violation []or the need to deter such conduct in the future." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 156 (E.D.N.Y. 2010). Nevertheless, the Court must never use its broad discretion in fashioning a statutory remedy to result in a windfall for a plaintiff. Id. Rather, an award under the Lanham Act is also subject to principles of equity and must therefore be adjusted to reflect the unique circumstances of each case. See, e.g., Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738 (7th Cir. 1985); Burger King Corp. v. Mason, 710 F.2d 1480 (11th Cir. 1983); Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331 (2d Cir. 1975); Ramada Inns, Inc.

v. Apple, 482 F. Supp. 753 (D.C.S.C. 1980). Thus, the Court must ensure that an award of statutory damages made under the Lanham Act is both equitable and substantial enough to advance the Act's goal of discouraging trademark infringement.

Plaintiff asserts that the $278,809.86 damages award it seeks is appropriate given that "[o]ther courts have granted statutory damages under the Lanham Act at a level similar to or greater than Plaintiff's request here[]." (ECF No. 17-2, 11). The cases plaintiff cites, however, do not provide such clear support for the award it seeks here. In two of the cases plaintiff cites, damages were awarded under section 1117(a) and (b), rather than the Lanham Act's statutory damages provision, because evidence of defendant's profits and plaintiff's actual damages was available. 15 U.S.C. § 1117(a)-(c); see Larsen v. Terk Technologies Corp., 151 F.3d 140 (4th Cir. 1998)(affirming district court's award of $217,700 where "the record clearly show[ed] that [plaintiff] lost sales of over 18,000 [products] due to [defendant's] intentional, willful, knowing, surreptitious and fraudulent passing off" and the district court calculated plaintiff's lost profits due to defendant's passing off to be $61,361.26); Microsoft Corp. v. Grey Computer, 910 F.Supp. 1077 (D. Md. 1995)(awarding $3,800,500 where evidence showed that plaintiff sustained $1,296,521.72 in lost profits

due to defendant's willful violation of the Lanham Act and treble damages were available).

Plaintiff also cites several cases in which statutory damages were imposed for violations of the Lanham Act. In _Playboy Enterprises, Inc. v. AsiaFocus International, Inc._, the court simply determined that "an award of $500,000 for each merchandise category will adequately fulfill the purpose of the statute," rather than first establishing a baseline figure or trebling the statutory damages award. 1998 WL 724000 at *9 (E.D.Va. April 10, 1998). The _Playboy Enterprises, Inc._ court awarded $500,000 in statutory damages for each of four categories of merchandise sold via two distinct internet sites through which defendants maintained an international operation, willfully infringed five of plaintiff's trademarks, solicited sales of merchandise and of subscriptions, and paid other websites to advertise their infringing site and counterfeit goods. _Id._ at *2-4. _Playboy Enterprises, Inc._ offers no applicable damages formula and, regardless, is factually distinguishable from the instant matter based upon the scale and nature of the operation at issue.

The U.S. District Court for the Southern District of New York similarly awarded significant statutory damages of $750,000 under section 1117(c) where law enforcement seized defendant's inventory of 5,512 counterfeit handbags worth at least $230,000,

defendants concealed evidence and lied under oath, and continued to operate counterfeiting operation concurrent with two years of judicial action intended to deter their conduct. <u>Sara Lee Corp. v. Bags of New York, Inc.</u>, 36 F.Supp.2d. 161, 167-70 (S.D.N.Y. 1999). Analogizing the Copyright Act to the Trademark Act and applying relevant factors accordingly in determining statutory damages, the Court found that "the high level of willfulness merits a trebling of the amount that would be appropriate as purely compensatory relief." <u>Id.</u> at 170 (noting that "[i]f [plaintiff] had sought actual damages rather than statutory damages, then trebling would have been automatic upon a finding of willfulness.").

As noted in <u>Gucci America, Inc. v. Myreplicahandbag.com</u>, 2008 WL 512789 *5 (S.D.N.Y.), "most judges have issued awards well below the maximums available on the basis of a per-mark-per-type-of-goods." Moreover, most cases in which courts have awarded statutory damages under the Lanham Act have involved large-scale distribution of counterfeit goods, as in the cases discussed above. This is in keeping with legislative history indicating that that the broader measure of damages available by statute is intended to address situations involving "sophisticated, large-scale counterfeiters." S. Rep. No. 104-177 (Nov. 28, 1995). For example, earlier this year, the Southern District of New York awarded $1.5 million in statutory

damages against a defendant-counterfeiter who reported net sales of $4.28 million for Burberry-branded merchandise during the period in question. Burberry Ltd. & Burberry USA v. Designers Imports, Inc., Civ. No. 07-3997, 2010 WL 199906 *10 (S.D.N.Y. Jan. 19, 2010). Finding willful infringement of three of Burberry's registered trademarks in conjunction with the sale of five types of counterfeit merchandise, the court awarded $100,000 per mark per type of goods sold, for a total of $1.5 million.[5] Id. at *10-11.

In late 2009, the same court awarded $4 million in statutory damages against a defendant-counterfeiter who admitted to purchasing and selling nearly 75,000 counterfeit items before 2003 and 8,872 counterfeit items between 2004 and 2005. Burberry Ltd. v. Euro Moda, Inc., Civ. No. 08-5781, 2009 WL 4432678 *1-2 (S.D.N.Y. Dec. 4, 2009). Plaintiffs later discovered, despite defendant's denial, that defendant had continued to sell counterfeit goods after 2005. Id. at *2. Burberry requested the maximum statutory damages allowed of $2 million per mark per type of good infringed, or $24 million. Id. at *3, *5. The court instead selected a $1 million baseline amount for statutory damages per type of good infringed, but did not further multiply its award by the three marks infringed, and

---

[5] Burberry requested statutory damages in the amount of $6.5 million. Burberry Ltd. & Burberry USA, Civ. No. 07-3997, 2010 WL 199906 at *10.

thus awarded a total of $4 million for the willful violation. Id. at *5-6.

It is not surprising that damages awards are lower where smaller scale operations are alleged and/or profit estimations are highly suspect.  For instance, the U.S. District Court for the Southern District of New York in Coach Servs., Inc. v. K Ya Int'l, Inc. awarded $20,000 for willful counterfeiting of three Coach marks, finding $6,667 per infringement reasonable because it "effectively serves both the punitive and deterrent purposes of 15 U.S.C. 1117(c)."  Civ. No. 09-4656, 2010 WL 2771897 *3 (S.D.N.Y. June 10, 2010).  Finding that a statutory award of approximately three times defendants' likely profits was appropriate, the same court awarded $18,000 per mark infringed in another case where defendants had a "small scale" operation and limited resources, but had likely sold between 2,000 and 4,000 handbags for a profit of between $8,000 and $32,000. Malletier v. Apex Creative Int'l Corp., 687 F. Supp. 2d 347, 355-58 (S.D.N.Y. 2010).  In Coach, Inc. v. Ocean Point Gifts, Civ. No. 09-4215, 2010 WL 2521444 (D.N.J. June 14, 2010), the Court awarded $10,000 per infringement (four types of goods and five trademarks) for a total statutory damages award of $200,000 where defendants sold counterfeit Coach bags at a small shop on the boardwalk.

In determining the amount of statutory damages,
courts consider several factors, including, _inter alia_:
the defendant's profits, the plaintiff's lost profits, the
defendant's willfulness, the size of defendant's
counterfeiting operation, the efforts to mislead and
conceal, and the need to deter the defendant and others.
_Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc._, No. CV
09-1899 (2010 WL 2985491 (E.D.N.Y.)(citing _Hermes Int'l v._
_Kiernan_, No. CV-06-3605, 2008 WL 4163208, at *4 (E.D.N.Y.
Aug. 28, 2008); _see_ _Fitzgerald Pub. Co. v. Baylor Pub._
_Co._, 807 F.2d 1110, 1117 (2d Cir. 1986); _Philip Morris USA_
_Inc. v. Marlboro Express,_ No. CV-03-1161, 2005 WL 2076921,
at *6 (E.D.N.Y. Aug. 26, 2005); _Gucci Am., Inc. v. Duty_
_Free Apparel, Ltd.,_ 315 F. Supp. 2d 511, 520 (S.D.N.Y.
2004); _Sara Lee Corp. v. Bags of New York, Inc._, 36 F.
Supp. 2d 161, 165-67 (S.D.N.Y. 1999).

Importantly, courts also consider where a particular
defendant is located along the chain of counterfeit distribution
and whether he or she dealt in large-scale distribution of
counterfeits. _Id._ For example, in _Church & Dwight_ the court
awarded statutory damages in varying amounts against defaulting
defendants depending on their level of involvement in the
Trojan-brand condom counterfeiting scheme. _Id._ at 295-302.
Awards ranged from $50,000 against an individual defendant who

allegedly "passed along limited amounts of condoms received from large distributors to small convenience stores," id. at 295, to $400,000 against a company that allegedly trafficked thousands of counterfeits, over 7,000 of which were recovered by private investigators in a single seizure and reported purchasing them from the back of a van, id. at 296, to $1 million against an individual who was caught in possession of approximately 600,000 counterfeits and was "significantly involved" in the counterfeiting operation, id. at 296-97, and $6 million against a corporate entity from which close to 1 million counterfeits were seized and which allegedly engaged in "highly suspicious" sales, purchases, and delivery circumstances in connection with the condoms, id. at 298.

Here, defendant was one of several defendants charged with maintaining a website by which she and the other defendants sold counterfeit Chanel goods. (ECF No. 1). Up to 37 counterfeit bags and 13 counterfeit wallets were listed on that website with a listed cumulative value of between $6,000 and $7,000 on any given day. (ECF No. 17-1, 10). In response to the cease and desist letter from plaintiff, defendant noted that she was a college student who "got the stuff from New York" and had not sold any of it. (ECF No. 17-8, 18). She said that she established her website when "a guy" offered her a way to make money to pay tuition. (Id. at 22). She was twenty-one years

old at the time.  (ECF No. 17-6, 15).  Thus, defendant appears
to be at the very bottom of the chain of counterfeit
distribution, and there is no evidence that the counterfeiting
operation was large-scale.  Moreover, it appears that her
operation was quite unsuccessful.

Plaintiff presents evidence that defendant offered
counterfeit goods on her website for 10 months, from August 8,
2008 to June 5, 2009.  (ECF No. 17-2 and attached exhibits).
But there is no evidence of the quantity sold and all
indications suggest that hers was a small time operation.

The typical starting point for assessing statutory damages
is actual damages such as plaintiff's loss or defendant's
profits.  See Sara Lee Corp. v. Bags of New York, Inc., 36 F.
Supp. 2d 161, 167 (S.D.N.Y. 1999).  It is impossible to
reasonably estimate actual damages here.  Plaintiff has
presented no evidence regarding gross sales and only advocates
an assumption that the defendant sold all of her inventory over
the period of her business.[6]  That is pure supposition as there
is only evidence of one sale.  However, if we assume that
defendant sold her entire inventory 20 times over a 10 month
period - 6K x 20 = 120K - and that defendant's profits would be
50 percent of those gross sales, the actual damages measured by

---

[6] The average of her value of her inventory on several different days.

defendant's profits would only be $60,000, or $180,000 if trebled.

### 4. Calculation of Damages

While the Court accepts as true all well-pleaded factual allegations of the Complaint, it does not accept plaintiff's calculation of damages. See CHARLES A. WRIGHT, ET ALS., 10A FEDERAL PRACTICE AND PROCEDURE § 2688, at 58-59. Based on the foregoing analysis, the Court concludes that plaintiff's calculation of statutory damages would result in an excessive award in this case. Accordingly, the undersigned recommends a statutory damages award of $84,000. This figure represents the following calculations: $2,000 per each of the seven Chanel marks infringed by defendant for a sum of $14,000, multiplied by the two types of goods sold by defendant for a sum of $28,000, and trebled due to evidence of willfulness[7] for a total statutory damages award of $84,000.

### 4. Attorney's Fees

Under 15 U.S.C. § 1117(a), a prevailing plaintiff is entitled to an award of reasonable attorney's fees if the case is "exceptional."[8] An "exceptional" case requires a showing of

---

[7] Defendant's actions were clearly willful. See ECF 17-2, 9 and exhibits D, F and H-L. Plaintiff sent a cease and desist letter. Defendant denied any unlawful activity but later assured Chanel that she would remove her website. Nonetheless, her website continued thereafter to sell counterfeit Chanel goods.

[8] Plaintiff notes that an award under § 1117(b) is "mandatory upon finding intent and knowledge." (ECF No. 17-2, 12). However, § 1117(b) does not

"malicious, fraudulent, willful, or deliberate" infringement.

People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001); J. THOMAS MCCARTHY, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:100.  More than mere negligence is required for an award of attorney attorney's fees, but where, as here, "there is proof of intentional infringement . . . it [would be] an abuse of discretion not to award attorney's fees." MCCARTHY § 30:100.

Plaintiff alleges that its counsel spent approximately 21.7 hours of attorneys' time in this case, that its hourly rates are equal to or less than prevailing market rates for comparable services in this state, and that its total amount of attorneys' fees of $7,287.00 is reasonable.  (ECF No. 17-2, 13).  Plaintiff also requests recovery of its reasonable investigative fees of $565.87, which were incurred by investigators acting under the direction of an attorney.  (Id., 13-14).  In light of the willfulness of defendant's violations of the Lanham Act and the amount of time necessary to conduct investigation and litigation in this case, the Court will award $7,287.00 to plaintiff as reasonable attorney's fees.  Plaintiff is also entitled to recover its costs of $425.00.

III. **Conclusion**

---

apply here, as plaintiff has elected to pursue statutory damages, and not treble actual damages under § 1117(b).

Pursuant to the Order of Reference dated January 22, 2010, the undersigned judge finds that an entry of a default judgment is appropriate and based on review of Chanel's memorandum and affidavit (ECF No. 17) and supplemental memorandum requested by the undersigned (ECF No. 34), and therefore recommends that the default judgment be entered in the total amount of $92,277.87, reflecting:

1. Statutory damages of $84,000.00;

2. Attorneys' fees of $7,287.00;

3. Investigative fees of $565.87; and

3. Costs of $425.00.

Additionally, the undersigned recommends that a permanent injunction be entered, in the form proposed with deletion of paragraph "(i)" and final substantive paragraph (ECF 17-4).

Date: __1/13/11_____          _____/s/_____
                                 Susan K. Gauvey
                                 United States Magistrate Judge